IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MAHENDRA M. GAJARAWALA,     )
     )
     )
    Plaintiff,     )
     )
  -vs-     )
     Civil Action No. 00-2522
     )
METROPOLITAN LIFE INSURANCE COMPANY     )
and DAVID ELMER,     )
     )
    Defendants.     )

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

Defendants Metropolitan Life Insurance Company ("MetLife") and David Elmer ("Elmer") (collectively, "Defendants") have filed two Motions in Limine (Docket Nos. 70, 85) seeking to exclude from evidence at trial a number of Plaintiff's proposed exhibits relating to testimony and documents concerning former MetLife employee, James Rayl. James Rayl was the Director of MetLife's Tulsa, Oklahoma Customer Service Center during time periods relevant to this case. Plaintiff opposes Defendants' Motions. (Docket Nos. 108-109). After careful review, Defendants' Motions are granted in part and denied in part as follows.

## I. Motion in Limine to Exclude from Evidence Unrelated Testimony and Exhibits of James Rayl

Defendants move to exclude Plaintiff's proposed Exhibit Nos. 135 and 136, the deposition testimony of James Rayl taken in previous employment discrimination litigation filed by Rayl against MetLife as well as the exhibits to that deposition. (Docket No. 70). Defendants argue that Rayl's testimony and exhibits are irrelevant and will serve only to inflame the jury. Defendants also argue that the exhibits are inadmissible hearsay or contain hearsay within hearsay. Defendants' motion is granted in part and denied in part.

As an initial matter, Plaintiff indicates in his response brief that he does not intend to read to the jury any portions of Rayl's deposition testimony concerning his employment claims against MetLife. Thus, Defendants' Motion to exclude these portions of Rayl's deposition testimony is denied as moot.

With respect to the deposition testimony, Plaintiff only seeks to read excerpts concerning Rayl's work history at MetLife, his communications concerning the "vanishing" premium/APP sales problems, and MetLife's response thereto. Pl.'s Resp. (Docket No. 109) at 3. I find that this testimony is relevant to Plaintiff's claims in this case. In particular, Rayl's concerns involve sales practices similar to Plaintiff's "vanishing premiums" allegations in this case. Such evidence may be relevant, for example, in establishing a pattern and practice on the part of MetLife, or a corporate culture encouraging similar deceptive sales techniques. This probative value is not substantially outweighed by the danger of unfair prejudice to

Defendants. Accordingly, Defendants' motion is denied to the extent it seeks to exclude these portions of Rayl's deposition testimony. Fed. R. Evid. 401, 402, 403.

The only individual document as to which Defendants raise a specific objection is Deposition Exhibit No. 38, a Rayl memo concerning the Pennsylvania Market Conduct Examination Report. (Docket No. 70, Ex. B). To the extent Defendants argue, however, that this memo is inadmissible because the Pennsylvania Report itself is inadmissible, such argument is unavailing. As set forth in my Opinion and Order dated July 18, 2006 (Docket No. 121), Defendants' motion to exclude the Pennsylvania Report was denied to the extent the report discusses or makes findings concerning sales practices similar to Plaintiff's allegations in this case. Therefore, I cannot exclude deposition exhibit 38 simply because the document to which it relates has been excluded, because it has not. Defendants also argue that deposition exhibit 38 is inadmissible because Rayl's testimony does not account for the unique factual circumstances of this case, and Rayl offers general opinions regarding MetLife that are unsubstantiated, unreliable and irrelevant to the transactions at issue. Def.'s Br. at 4. To the extent exhibit 38 relates to concerns regarding sales practices similar to Plaintiff's "vanishing premium" allegations in this case, this argument fails because such evidence may be relevant in establishing a pattern and practice on the part of MetLife, or a corporate culture encouraging similar deceptive sales techniques. This probative value is not substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 401,

402, 403.[1]

Defendants' Motion is also denied to the extent it seeks to exclude the remaining exhibits to Rayl's deposition testimony in their entirety[2] on the basis of irrelevance or prejudice. To the extent these deposition exhibits are documents to which Defendants object more specifically in their other Motion in Limine (Docket No. 85), those documents and objections thereto are discussed more fully below. Insofar as any remaining exhibits relate to Rayl's concerns regarding sales practices similar to Plaintiff's "vanishing premium" allegations in this case, such evidence is probative and is not unduly prejudicial for the reasons set forth above.

I also disagree with Defendants that the Rayl deposition exhibits are categorically inadmissible as hearsay.[3] As an initial matter, Plaintiff indicates that he will be able to establish at trial that the documents are business records within the

---

[1] Upon review, it appears that deposition exhibit 38 pertains primarily to allegations of "churning" and improper Policy replacement as opposed to the "vanishing premium" allegations at issue in this case. Plaintiff correctly notes, however, that at least some portions of the memo discuss vanishing premiums and the APP program. As a result, I decline to exclude deposition exhibit 38 in its entirety at this juncture. Defendants, however, remain free to raise a more specific relevance objection at trial.

[2] The deposition exhibits to which Defendants object are voluminous and consist of multiple documents. With the exception of Deposition Exhibit 38, which consists of a single document, Defendants do not make specific objections to the individual documents contained within each disputed deposition exhibit. Consequently, I only am able to rule at this time as to whether these documents are admissible or inadmissible as a whole.

[3] My discussion of Defendants' hearsay objections presumes that Plaintiff intends to offer the statements for the truth of the matter asserted. Obviously, the statements are not hearsay to the extent Plaintiff offers them at trial to prove something other than the truth of the matter asserted. See Fed. R. Evid. 801(c).

4

meaning of Rule 803(6).[4] Plaintiff also argues that Rayl's statements are admissible as admissions of a party-opponent, an argument not addressed by Defendants. Fed. R. Evid. 801. Even if the statements are neither admissions nor business records within the meaning of the Rules of Evidence, however, I find that the exhibits to Rayl's deposition may be admissible under the "residual" hearsay exception set forth in Rule 807.

Rule 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

---

[4]Rule 803(6) provides an exception to the hearsay rule for a:

memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

5

Fed. R. Evid. 807.

Defendants' Motion is granted, however, with respect to any portions of the Rayl exhibits that constitute hearsay within hearsay. For example, any statements in a document authored by Rayl as to what a customer said or told him are double hearsay and must be excluded, unless an independent hearsay exception applies. Fed. R. Evid. 805. Plaintiff has not identified any such exceptions.

Defendants' Motion also is granted with respect to any "expert"-type opinions contained in Rayl's deposition testimony or exhibits. Rayl is not an expert witness, and, thus, opinion evidence properly within the realm of an expert is inadmissible.

## II. Motion in Limine to Exclude Plaintiffs' Exhibit Nos. 33, 51, 52, 53, 54, 61, 67, 68, 71, 74, and 132 (Docket No. 85)

Defendants move to exclude as evidence at trial Plaintiff's Exhibit Nos. 33, 51, 52, 53, 54, 61, 68, 71, 74, and 132, all of which are documents authored by or referencing James Rayl and his concerns regarding sales practices associated with the accelerated premium program. (Docket No. 85). For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

### A. Exhibit Nos. 33, 51, 52, 67, 68, 71, and 74

Defendants argue that Exhibit Nos. 33, 51, 52, 67, 68, 71, and 74[5] are irrelevant because they were authored between 1992 and 1995 when Rayl worked in the Tulsa

---

[5] Defendants have attached copies of these proposed exhibits as Exhibit B to their Motion in Limine. (Docket No. 73, Ex. B).

6

Call Center and after the sale of Plaintiff's policies. Defendants assert that the only possible relevance of these documents is to show that MetLife had notice of the alleged improper sales practices. Defendants reason that because the documents were authored after Plaintiff purchased his policies, they cannot establish notice and, therefore, are irrelevant and inadmissible. Defs.' Br. (Docket No. 86) at 3-5.

I disagree. As set forth in Section I, supra, Rayl's concerns regarding deceptive sales tactics are substantially similar to the allegations raised by Plaintiff in connection with his policies. Moreover, although Rayl may have authored his documents after the sale of Plaintiff's policies,[6] he discusses practices that began well prior to 1992. Thus, even if the documents are irrelevant to show notice, they may be relevant in establishing a pattern and practice on the part of MetLife, or a corporate culture encouraging similar deceptive sales techniques.

I also disagree that these proposed exhibits are irrelevant because they do not specifically mention Pennsylvania. Plaintiff alleges that MetLife agents used the same deceptive sales techniques on a national level, and the documents support this assertion. The fact that the documents fail to mention Pennsylvania goes to the weight of the evidence, not its admissibility.

In short, I find that proposed Exhibit Nos. 33, 51, 52, 67, 68, and 71 are relevant to Plaintiff's claims in this case. I also find that this probative value is not substantially outweighed by the danger of unfair prejudice to Defendants.

---

[6] Although all of the documents attached as Exhibit B to Defendants' Motion are dated after the sale of the policies at issue, three of the challenged exhibits (33, 51, and 52) are dated in late 1992, prior to a sales representative's allegedly fraudulent use in August 1993 of an illustration for one of Plaintiff's policies indicating a "six year vanishing premium arrangement."

7

For the reasons set forth in Section I, supra, I also disagree that these exhibits are categorically inadmissible as hearsay. Thus, Defendants' Motion to exclude the exhibits as hearsay is denied. Defendants' Motion is granted, however, to the extent the exhibits contain hearsay within hearsay, such as Rayl's description of what a customer said, to the extent such statements are offered for the truth of the matter asserted therein. Defendants' Motion also is granted with respect to any "expert"-type opinions contained in the exhibits at issue. As set forth above, Rayl is not an expert witness and, thus, any opinions properly within the realm of an expert are inadmissible.

A final issue exists with respect to the document attached to Defendants' Motion as proposed Exhibit 74. Docket No. 85, Ex. B. Although this document mentions Rayl and his concerns, proposed Exhibit 74 was neither written by nor addressed to Rayl – unlike the other exhibits at issue in Defendants' Motion. Thus, it is unclear to me how Plaintiff intends to introduce this document at trial. In addition, although the parties do not specifically discuss the article attached to Exhibit 74, that article appears to be replete with hearsay. The portions of the article discussing MetLife also strike me as unfairly prejudicial. For these reasons, Defendants' Motion is granted to the extent it seeks to exclude the article attached to Plaintiff's proposed Exhibit No. 74. If Plaintiff plans to introduce the remainder of Exhibit 74 at trial (i.e., the letter itself), he must lay an appropriate foundation as well as obviate any hearsay and/or authentication concerns.

**B. Exhibit Nos. 53 and 54**

Proposed Exhibit No. 53 is a December 23, 1992 letter from Rayl to David G. Martin, Vice President, Mid-America Territory, regarding Rayl's deceptive sales practice concerns. (Docket No. 85, Ex. C). Proposed Exhibit 54 is a December 31, 1992 letter from Rayl to Kathy Schoos, Director of Customer Services and Communications in MetLife's Warwick Customer Service Center, thanking Schoos for writing a letter in support of his concerns. Id. Defendants argue that these exhibits are irrelevant, prejudicial, and inadmissible hearsay. Defs.' Br. (Docket No. 86) at 5-6.

I disagree that Exhibits 53 and 54 are irrelevant and/or unfairly prejudicial. As with the exhibits discussed above, Exhibits 53 and 54 are probative as to a pattern and practice on the part of MetLife, or a corporate culture encouraging similar deceptive sales techniques. Exhibit 54 is relevant for the additional reason that it shows that the director of MetLife's Warwick customer service center (the only other MetLife call center at the time) shared the same concerns as Rayl. Thus, Exhibit 54 undercuts any assertion by Defendants that Rayl's concerns were confined to the Tulsa call center and were not nationwide. This probative value is not substantially outweighed by the danger of unfair prejudice to Defendants.

For the reasons set forth in Section I, supra, I also disagree that proposed Exhibits 53 and 54 are categorically inadmissible hearsay. Thus, Defendants' Motion to exclude the exhibits as hearsay is denied. Defendants' Motion is granted, however, to the extent the exhibits contain hearsay within hearsay, to the extent such statements are offered for the truth of the matter asserted therein. For example, the customer complaint attached to the Rayl memo in Exhibit 53 appears

9

to be inadmissible hearsay and hearsay within hearsay. Defendants' Motion also is granted with respect to any "expert"-type opinions contained in the exhibits at issue. As set forth above, Rayl is not an expert witness and, thus, any opinions properly within the realm of an expert are inadmissible.

### C. Exhibit No. 61

Defendants move to exclude in its entirety Plaintiff's proposed Exhibit No. 61, a January 19, 1994 letter from Rayl to Robert J. Crimmins, Executive Vice-President of Personal Insurance. (Docket No. 85, Ex. D). This portion of Defendants' Motion is denied. I find that Exhibit 61, which specifically mentions Rayl's "paid up" policy concerns, is probative as to a pattern and practice on the part of MetLife, or a corporate culture encouraging similar deceptive sales techniques. I further find that this probative value is not substantially outweighed by the danger of unfair prejudice to Defendants.

For the reasons set forth in Section I, supra, I also disagree that proposed Exhibit 61 is categorically inadmissible hearsay. Thus, Defendants' Motion to exclude Exhibit 61 as hearsay is denied. Defendants' Motion is granted, however, to the extent Exhibit 61 contains hearsay within hearsay, to the extent such statements are offered for the truth of the matter asserted therein. Defendants' Motion also is granted with respect to any "expert"-type opinions contained in Exhibit 61. As set forth above, Rayl is not an expert witness and, thus, any opinions properly within the realm of an expert are inadmissible.

### D. Exhibit No. 132

Defendants also move to exclude Plaintiff's proposed Exhibit No. 132, a Personal Insurance Development Review for Rayl for the year 1991. (Docket No. 85, Ex. D). The document provides an overview of Rayl's job responsibilities, discusses his accomplishments, provides an overall assessment of his 1991 performance and contributions, and sets forth a development plan for the future. Id. Defendants argue that the review has no relation to the transactions at issue in this case and, therefore, should be excluded as irrelevant, prejudicial, and likely to confuse the jury. This portion of Defendants' Motion is granted.

Plaintiff's only argument in support of admissibility of Exhibit 132 is that the exhibit "demonstrates that Mr. Rayl was part of MetLife management and Director in charge of the Customer Service Center" and supports Rayl's credibility with respect to the use of APP sales and Met Life's corporate culture. Pl.'s Resp. (Docket No. 108) at 8. This argument is unpersuasive. Rayl's job performance in 1991 is simply not at issue in this case. Furthermore, the document does not make any reference to APP sales or Met Life's corporate culture related to such sales and otherwise bears no relation to any of the transactions at the heart of this lawsuit. Thus, I fail to see how the document is relevant to any of Plaintiff's claims. See Fed. R. Evid. 401, 402.

Even if the review is relevant because it identifies Rayl's position within the Company, the review is unnecessary to establish that fact. To the extent Defendants even dispute Rayl's position within the Company, Rayl's job title is reflected on numerous admissible documents authored by Rayl and in his deposition testimony.

Thus, any minimal relevance of Exhibit 132 is substantially outweighed by the danger of confusion of the issues and considerations of undue delay, waste of time, and needless presentation of cumulative evidence. See Fed. R. Evid. 403.

### III. **CONCLUSION**

For all of these reasons, Defendants' Motions to exclude evidence relating to James Rayl are granted in part and denied in part. An appropriate Order follows.

*******************************

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAHENDRA M. GAJARAWALA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 00-2522 |
| METROPOLITAN LIFE INSURANCE COMPANY | ) |
| and DAVID ELMER, | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **20th** day of July, 2006, after careful consideration of the parties' submissions, it is Ordered that the following Motions are granted in part and denied in part as set forth more fully in the Opinion accompanying this order:

1. Defendants' Motion in Limine to Exclude From Evidence Unrelated Testimony and Exhibits of James Rayl (Docket No. 70); and

2. Defendants' Motion in Limine to Exclude From Evidence Plaintiff's Exhibit Nos. 33, 51, 52, 53, 54, 61, 67, 68, 71, 74, and 132, Documents Authored by and Relating to James Rayl (Docket No. 85).

BY THE COURT:

/S/ Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge